IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                                      3:03CR105/LAC
                                                                         3:04CV461/LAC/MD

KENNETH KELLEY

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 53). The government has filed a response (doc. 60) and the defendant has filed a reply (doc. 65). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, both in writing and at an evidentiary hearing, it is the opinion of the undersigned that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a single count indictment with conspiracy to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine. He was represented by appointed counsel, Christopher L. Rabby. The government filed a notice of enhancement alleging a single prior felony drug conviction from the State of California, (doc. 30), and defendant pleaded guilty pursuant to a plea and cooperation agreement on the same date. (Doc. 31). He was sentenced on December 23, 2003 to a term of 240 months imprisonment, followed by 10 years

supervised release and a $100 special monetary assessment. He did not appeal.

In the present motion, defendant raises four grounds for relief, all of which relate to the alleged ineffectiveness of court appointed counsel.

## II. LEGAL ANALYSIS

A. <u>Ineffective assistance of counsel--Legal Standard</u>

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled

to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original).

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail

. . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

B.  <u>Defendant's claims for relief</u>

   1.  <u>Failure to file an appeal</u>

Defendant first claims that counsel was ineffective because he failed to file an appeal. If a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)). Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. *Id.* However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra* 1034-1035. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035. The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that the was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036.

In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed. *Id.* at 1038, 1040. "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 1039.

In this case, defendant claims that counsel failed to file a notice of appeal although defendant verbally instructed him to do so after sentencing. His motion contains no specifics. Along with his reply, he submitted an affidavit in which he states that:

> After the sentence was rendered in my case, I specifically requested Mr. Rabby to appeal my sentence by making an oral request for an appeal directly to Mr. Rabby. This request to Mr. Rabby occurred on December 23, 2003 and immediately after the sentencing judge announced the judgment in my case.

Mr. Rabby stated in his affidavit:

> The Defendant did not advise me to file an appeal on his behalf. I discussed the appeal of a minimum mandatory sentence with him prior to sentencing on December 18, 2003. At that time I advised him that there would not be a Substantial Assistance Motion filed on his behalf, pursuant to § 5k1.1. Mr. Kelley hoped to receive a Rule 35, substantial assistance sentence reduction. He was aware of his right to appeal, but understood that the

>sentence to be imposed was mandatory and would not result in a lesser sentence. Mr. Kelley never made an appeal request to me, before or after he was sentenced. I would have immediately filed an appeal on his behalf if he had so desired.

(Doc. 60, exh. 5).

Due to this discrepancy between the defendant's and counsel's recollection of events, the court held an evidentiary hearing on June 16, 2005, which was to be expressly limited to the issue of counsel's failure to file an appeal.

Defendant testified at the hearing that he requested that counsel file an appeal as he was being escorted out of the courtroom with counsel on one side and the marshal on the other. He did not repeat the request on any other occasion, and indicated that he had not memorialized his request in writing, although he did recall that the court had recommended that this be done. (See doc. 59 at 7).[1] Defendant testified that he never wrote to Mr. Rabby after the conclusion of his case, although he tried to call him 4-6 times. He stated that he also asked his sister to call Mr. Rabby to find out about the appeal. In late July, 2004, he wrote a letter to the Eleventh Circuit asking for a copy of the docket sheet in his appeal, indicating he had not received a case number or anything else from that court. (Doc. 69, defense exhibit 1). The clerk responded that there was no pending appeal on his behalf, and suggested that he contact his trial attorney. Again, defendant did not write to counsel after receiving this letter. The instant motion was filed approximately 4 months later.

Counsel Christopher Rabby testified that he was a CJA attorney appointed to represent the defendant at trial. He noted that because of the nature of his appointment, he would have earned more money had he also been able to represent the defendant on appeal. He testified that he spoke with his client about his appeal rights even before sentencing, and advised him that an appeal would not be successful because of the application of the 20 year mandatory minimum sentence. He also noted that he discussed

---

[1] The court had also advised the defendant after sentencing that Mr. Rabby was appointed to assist him with his appeal.

*Case No: 3:03cr105/LAC; 3:04cv461/LAC/MD*

with defendant before sentencing the fact that if he hoped to get a Rule 35, it was best not to appeal. Counsel stated with assurance that his client had not said he wanted to appeal, because if he had, counsel would have appealed. He indicated he did not receive any telephone messages from the defendant regarding an appeal or otherwise, and no correspondence. Mr. Rabby testified that he spoke to the defendant's daughter and sister and his boss's wife, but none ever mentioned an appeal. Counsel further stated that even after a more detailed review of his files in preparation for the hearing, everything he had said in the affidavit filed in response to the § 2255 motion remained true. On cross-examination, counsel again stated that had he heard his client ask him to appeal, he would have. He also noted that he had expected his client to receive a Rule 35 because defendant had had numerous conversations with law enforcement, although this did not happen.

      After hearing the testimony at the hearing, the court finds counsel's recollection of events to be more credible. Clearly, the defendant did not notify counsel in writing of his desire to appeal. Furthermore, although defendant testified that he made several attempts to call counsel, he did not contact counsel in writing at any time after sentencing. Counsel confirmed that, and also stated that he did not receive any messages that defendant had tried to call. In addition, although defendant testified that he asked his sister to contact counsel, counsel testified that conversations he had with other individuals on defendant's behalf were about defendant's location within the Bureau of Prisons and defendant's continued efforts at cooperation and the possibility of receiving a Rule 35 motion. Furthermore, counsel stated in no uncertain terms on both direct and cross examination that had defendant requested that he file a notice of appeal he would have done so, although he did not believe there were any viable appeal issues, and there was a possibility of jeopardizing defendant's future attempts at cooperation.

      Accordingly, the court finds that defendant did not specifically request that counsel file an appeal. Furthermore, the court finds that counsel consulted with the defendant about the possibility of an appeal even before sentencing. And, based on the application of the minimum mandatory sentence and the potential for defendant to receive a Rule 35,

*Case No: 3:03cr105/LAC; 3:04cv461/LAC/MD*

counsel was not ineffective for concluding that an appeal was ill-advised. Therefore, defendant is not entitled to relief on this ground.

2. Drug weight

Defendant's second and third grounds for relief relate to the quantity of methamphetamine attributed to him. He was sentenced pursuant to 21 U.S.C. § 841(b)(1)(A)(viii), which applies to 50 grams or more of actual methamphetamine or 500 grams or more of a substance containing a detectable amount of methamphetamine. Because of his prior felony drug conviction, the minimum mandatory sentence was 20, rather than 10, years. He contends in his motion to vacate that counsel was ineffective because he did not object to defendant being sentenced under that section instead of § 841(b)(1)(B)(viii) which applies to offenses involving over 5 grams of methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. He states that he should have been sentenced for possession of only 120 grams of a mixture or substance containing methamphetamine.

Defendant appears to derive his 120 gram figure from paragraph 19 of the PSR which indicates that the co-defendants are responsible for the production and/or distribution of at least 120 grams of methamphetamine during this conspiracy. This amount was based on a conservative estimate of the average yield for between 10 and 12 methamphetamine "cooks." The quantity is described as a "conservative weight to which all parties are in agreement."[2] Although the statement that this was the "yield" from the cooks would suggest that the quantity was pure or "actual" methamphetamine, the Base Offense Level ("BOL") attributed to the defendant was a 26. This BOL applies to offenses involving at least 50 grams but less than 200 grams of methamphetamine, or at least 5 grams but less than 20 grams of **actual** methamphetamine. Therefore, the 120 grams was not considered "actual" methamphetamine, for purposes of calculating the BOL. And,

---

[2]The one ounce of methamphetamine mentioned in paragraph 17 of the PSR as having been purchased by a confidential informant during the course of the conspiracy could have been part of this quantity.

if it was not "actual" methamphetamine, it alone would not be sufficient to meet the government's statutory burden of showing that the defendant's offense conduct involved 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

Although the 120 grams of methamphetamine was the only amount attributed to defendant for guidelines purposes in the PSR, the previous paragraph of the PSR indicates that containers seized during two searches of the home defendant shared with co-defendant McMillian held 284.7 and 1,324.0 grams of methamphetamine oil respectively. This methamphetamine oil was not used to compute the defendant's base offense level because the guidelines and the statute do not treat "mixtures or substances" identically.[3] Commentary note 1 to § 2D1.1 states:

> "mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used.

Therefore, the entire weight of the methamphetamine oil cannot be considered as part of the mixture or substance for *guidelines* purposes. *Cf. United States v. Newsome*, 998 F.2d 1571, 1577 (11th Cir. 1993) (court attributed 4.99 kilograms of methamphetamine as projected yield from 4.19 kilograms of seized methamphetamine oil.) The statute does not carry this same limitation. Furthermore, the laboratory reports analyzing the methamphetamine oil which are appended to the government's response as composite exhibit 3 reveal that the oil contained well over the threshold 500 grams of impure methamphetamine required for the penalties imposed under 21 U.S.C. § 841(b)(1)(A) to be applicable to defendant's case.

Although the evidentiary hearing was not intended to encompass this issue, both sides presented some testimony on the matter, none of which would alter the court's

---

[3] Although purely academic, the court notes that if the 1608.7 grams of methamphetamine oil were to be considered, the BOL would have been a level 34. Defendant would have ended up, all things being equal, with a total offense level of 37, and an applicable sentencing guidelines range of 262 to 327 months, in excess of the statutory minimum mandatory sentence he received.

*Case No: 3:03cr105/LAC; 3:04cv461/LAC/MD*

conclusion after review of the written record. Because counsel's objection could not have been successful, he was not ineffective for his failure to object. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

### 3. Failure to object to prior conviction

Defendant claims that counsel should have objected to the notice of enhancement filed by the government because the listed conviction was a misdemeanor, rather than a felony. In fact, the record reflects that counsel did object, or request more information, about the California conviction. In counsel's initial objections to the PSR, dated December 3, 2003, he indicates that he had learned that the charged offense could be either a felony or a misdemeanor under California law, and that although the document that had been provided to him indicated "fel," his client believed he had pleaded to a misdemeanor. Therefore, counsel sought additional information about the conviction. In a subsequent letter to the probation office dated December 18, 2003, counsel indicates that the objection to the prior conviction being used as an enhancement was withdrawn.

In the affidavit submitted in support of the government's response counsel explained that the defendant originally objected to the enhancement based upon the prior offense, but then counsel and probation received records showing that the offense was a felony offense. After discussing the matter with his client, the objection was withdrawn. (Doc. 60, exh. 5).

The issue of whether the conviction was a felony or misdemeanor was discussed at sentencing.  The government introduced into evidence a packet of materials collected by the probation officer with respect to defendant's California conviction, "for purposes of any review at a subsequent date on Mr. Rabby's performance in objecting and then withdrawing his objection because these [documents] clearly support that enhancement."  (Doc. 59 at 3).  Defendant's conclusory assertion in his reply brief that the documents introduced into evidence were insufficient and that counsel should have done more research does not entitle him to relief.  He has failed to provide the court with any proof that even had counsel done additional research, the outcome of the proceeding would have been different.  In fact, although this issue was not before the court at the evidentiary hearing, both sides presented evidence on the matter.  Nothing that was presented would lead the court to a different conclusion.  Counsel filed an objection to preserve the issue because he was unsure whether the conviction was a felony or misdemeanor.  Upon being presented with proof that it was a felony, he discussed the matter with his client, who agreed it was a felony, and then withdrew his objection.  Counsel's performance was reasonable under the circumstances, *Williamson*, *supra*, 221 F.3d at 1180, and counsel was not ineffective for failing to persist in arguing a meritless claim.  See *Brownlee v. Haley*, *supra*; *Meeks v. Moore*, *supra*; *Jackson v. Herring*, *supra*.  Therefore defendant is not entitled to relief on this claim.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 53)  be DENIED.

At Pensacola, Florida, this 5th day of July, 2005.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

*Case No: 3:03cr105/LAC; 3:04cv461/LAC/MD*

*Page 12 of 12*

## **NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:03cr105/LAC; 3:04cv461/LAC/MD*